UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――

WILLIAM ZURENDA,

                Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

―――――――――――――――――――――――――――――――

**REPORT AND
RECOMMENDATION**

11-CV-1114
(MAD/VEB)

## I. INTRODUCTION

In June of 2009, Jennifer Zurenda ("Claimant") applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleged that she has been unable to work since December of 2008 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application.

In September of 2011, Claimant, by and through her attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). Claimant passed away on September 19, 2012. (Docket No. 19). On November 14, 2012, Claimant's father, William Zurenda, was substituted as the plaintiff in this case by Order of the Honorable Randolph F. Treece, United States Magistrate Judge. (Docket No. 21).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A)

and (B) on January 3, 2013. (Docket No. 22).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Claimant applied for SSI benefits and DIB on June 16, 2009, alleging disability beginning on December 23, 2008. (T at 9, 93-94).[1] The applications were denied initially and Claimant requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 23, 2010, in Binghamton, New York before ALJ Edward I. Pitts. (T at 26). Claimant appeared *pro se* and testified. (T at 30-59).

On November 23, 2010, ALJ Pitts issued a written decision finding that Claimant was not disabled and was therefore not entitled to benefits. (T at 6-25). The ALJ's decision became the Commissioner's final decision on August 25, 2011, when the Appeals Council denied Claimant's request for review. (T at 1-3).

Claimant, through counsel, timely commenced this action on September 20, 2011. (Docket No. 1). The Commissioner interposed an Answer on January 17, 2012. (Docket No. 8). Claimant filed a supporting Brief on March 15, 2012. (Docket No. 14). The Commissioner filed a Brief in opposition on June 14, 2012. (Docket No. 18). As noted above, Claimant passed away while this case was pending[2] and her father was substituted as the plaintiff on November 14, 2012. (Docket No. 21).

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2]Claimant suffered a heart attack and passed away at her home. (Docket No. 19, p. 2).

2

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for calculation of benefits.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2014. The ALJ noted that Claimant had an unsuccessful work attempt after December 23, 2008, the alleged onset date. (T at 11). The ALJ concluded that Claimant had the following "severe" impairments under the Act: bilateral degenerative joint disease of the knees, degenerative disc disease of the cervical spine, asthma, depression, and obesity. (T at 11-12).

_____

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 12-14). The ALJ concluded that Claimant retained the residual functional capacity to perform sedentary work, except that she was limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and overhead reaching; and no concentrated exposure to respiratory irritants, and simple, entry-level work. (T at 14-17).

The ALJ found that Claimant could not perform her past relevant work as a home health aide, customer service worker, or receptionist in a medical office. (T at 17). Considering Plaintiff's age (36 years old on the alleged onset date), education (high school), work experience, and RFC (sedentary work, with limitations), the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (T at 18).

Accordingly, the ALJ determined that Claimant was not disabled under the Social Security Act between the alleged onset date (December 23, 2008) and the date of his decision (November 23, 2010) and was not entitled to benefits. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on August 25, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2.    Plaintiff's Arguments

Plaintiff, through counsel, contends that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments are offered in support of this position. First, Plaintiff argues that the ALJ's residual functional capacity finding is not supported by substantial evidence. Second, Plaintiff contends that the ALJ erred by failing to adequately

address the impact of Claimant's obesity. Third, Plaintiff challenges the ALJ's finding that Claimant's spine and thyroid conditions were non-severe. Fourth, Plaintiff argues that the ALJ should have concluded that Claimant's impairment met or equaled the impairments set forth in § 1.02 or §1.03 of the Listings. This Court will examine each argument in turn.

### a. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Claimant retained the residual functional capacity to perform sedentary work, except that she was limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and overhead reaching; and no concentrated exposure to respiratory irritants, and simple, entry-level work. (T at 14-17).

Plaintiff challenges the ALJ's finding that Claimant could perform sedentary work and

points to the following evidence:

Dr. Pranab Datta, a consultative examiner, opined in November of 2009 that Claimant had no significant limitations with her upper extremities for fine and gross motor activities, but had mild to moderate limitations for sitting; moderate to marked limitations for standing; marked limitations for walking and climbing; and could not bend, lift, or carry. (T at 501).

In July of 2009, Dr. Benjamin Bartolotto, a treating chiropractor, opined that Claimant was "in constant pain" and "disabled" from her activities of daily living and from gainful employment. (T at 372). Dr. Bartolotto reported that Claimant was limited to occasionally lifting/carrying two pounds; could stand and/or walk for "less than 2 hours per day"; and was limited to sitting less than 6 hours per day. (T at 372).

In September of 2009, Dr. Todd Battaglia, a treating orthopedic doctor, indicated that Claimant had a "total disability." (T at 470). Dr. Hong Yu, a treating physician, indicated in March of that year that Claimant could "only work part-time," although this assessment was contained in a section headed "subjective." (T at 380).

For the reasons set forth below, this Court finds that the ALJ's RFC determination is not support by substantial evidence. All of the examining medical professionals indicated that Claimant had limitations inconsistent with sedentary work. The ALJ appears to have substituted his judgment for the examining professionals' medical judgment. The ALJ engaged in a lengthy discussion regarding the fact that Claimant worked with pain prior to the alleged onset date (T at 15-16), but offered only a relatively brief (and incomplete) discussion of the medical opinion evidence. (T at 16-17).

More specifically, the ALJ did not provide a "function-by-function" assessment of

Claimant's RFC. Under the Social Security Regulations, the ALJ's RFC assessment must include a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis. With regard to physical limitations, this means the ALJ must make a function-by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

At least three circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir.2003) (an ALJ does not fail in his or her duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found); Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir.2002).[5]

---

[5]The Third Circuit and Seventh Circuit have reached similar conclusions, albeit in unpublished decisions. See Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (3d Cir.2000)) ("Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."); Zatz v. Astrue, 346 F. App'x 107, 111 (7th Cir.2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

District courts in the Second Circuit have reached conflicting conclusions, with courts in the Northern and Western Districts of New York generally finding that a remand is required when the ALJ fails to provide a function-by-function analysis.  See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); McMullen v. Astrue, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008);  Brown v. Barnhart, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence."); Matejka v. Barnhart, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); but see Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); but see Martin v. Astrue, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC

determination").

This Court has expressed its view that, in limited circumstances, an ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment. However, in this case, as outlined below, the lack of a function-by-function assessment most certainly frustrates review.

The ALJ did not make a specific finding regarding Claimant's ability to sit for prolonged periods, a significant omission given the findings of the examining medical professionals.

In general, sedentary work requires 6 hours of sitting in an 8-hour work day. See SSR 96-9p; SSR 83-10. Dr. Datta, the consultative examiner, found that Claimant had mild to moderate limitations for sitting. (T at 501). The ALJ afforded Dr. Datta's opinion "great weight" (T at 17), but made no attempt to reconcile the "mild to moderate" sitting limitation contained in that opinion with the RFC assessment.

Dr. Bartolotto, a treating chiropractor, indicated that Claimant was limited to sitting less than 6 hours per day. (T at 372). The ALJ found Dr. Bartolotto's opinion "mostly consistent with the medical records as a whole," but noted that he was "not an acceptable medical source" and gave the opinion only "limited" weight. (T at 17). Although the ALJ was correct in noting that Dr. Bartolotto was not an "acceptable medical source" as defined under the Social Security Regulations,[6] he was nevertheless obliged to provide a more

---

[6]A "treating source" is entitled to special weight, but not all treating health care providers are "treating sources" under the applicable Regulations. A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. There are five categories of "acceptable medical

detailed explanation as to whether and how he reconciled Dr. Bartolotto's assessment with his RFC determination. In other words, at the very least, having determined that Dr. Bartolotto's opinion was "mostly consistent with the medical records as a whole," the ALJ was obliged to address the inconsistency between his RFC assessment (which included no limitation as to sitting) with the opinion of this examining medical source. See SSR 06-03p ("[I]information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."); see also Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009)("Based on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician."); Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant").

Likewise, both Dr. Datta and Dr. Bartolotto indicated walking and standing limitations inconsistent with sedentary work, which generally involves up to 2 hours of standing and walking in an 8-hour day. SSR 96-9p. Dr. Datta opined that Claimant had moderate to marked limitations for standing and a marked limitation for walking. (T at 501). Again, the ALJ afforded "great weight" to this opinion, but made no attempt to reconcile these

---

sources." 20 C.F.R. § 404.1513 (a). Chiropractors are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight. Rather, chiropractors are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).

limitations with the RFC assessment. (T at 16). Dr. Bartolotto concluded that Claimant could only stand and/or walk for less than 2 hours per day. (T at 372). The ALJ gave "limited" weight to this opinion, but did not explain how he incorporated it into his (implicit) conclusion that Claimant could stand/walk for up to 2 hours in an 8-hour work days, as would be required to perform sedentary work.

Lastly, the ALJ erred by failing to discuss at all the statements provided by Dr. Yu and Dr. Battaglia. Although those statements may not have been entitled to controlling weight,[7] the ALJ should at least addressed them in connection with his RFC assessment.

It is well settled in the Second Circuit that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

Here, the ALJ appears to have substituted his medical judgment for that of examining providers, including the consultative examiner. The ALJ spent inordinate time

---

[7]Dr. Battaglia, a treating orthopedic doctor, indicated that Claimant had a "total disability." (T at 470). However, the disability determination is ultimately reserved to the Commissioner. 20 C.F.R. § 404.1527(e); SSR 96-5p. Dr. Yu reported that Claimant could "only work part-time," although this assessment was contained in a section headed "subjective." (T at 380). As such, he may have been simply reporting Claimant's self-assessment, rather than offering a medical opinion.

and attention discussing Claimant's work record prior to the alleged onset date and not nearly enough time considering whether and how his RFC determination could be reconciled with the limitations assessed by the examining providers. The ALJ's decision thus lacks a function-by-function assessment and/or an explanation as to the medical basis for his conclusion that Claimant's sit/stand/walk limitations did not preclude sedentary work. This Court accordingly finds that the ALJ's decision should not be sustained.

### b. Obesity

Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Barnhart, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); see also SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." SSR 02-1 p, 2000 WL 628049, at *7.

In this case, the ALJ did find that Claimant was obese and that obesity was one of her severe impairments. (T at 11). The ALJ indicated that he had considered the impact of Claimant's obesity in potentially aggravating her other impairments and affecting her

ability to sustain basic work activities on a regular and continuing basis. (T at 12-13).

Plaintiff contends that the ALJ's obesity analysis was inadequate, but does not specify what additional consideration the ALJ should have given to the issue. None of the treating or examining sources attributed particular additional or cumulative limitations to obesity. This Court finds no error as to this aspect of the ALJ's decision.

### c. Severity of Spine and Thyroid

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only

a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff contends that the ALJ should have found that Claimant's lower back pain constituted a severe impairment. Plaintiff notes evidence of Claimant's low back pain complaints and Dr. Bartolotto's sit/stand limitations. (T at 372, 485, 590, 596). Plaintiff also contends that Claimant's thyroid hormone imbalance was a severe impairment, pointing to a report by Dr. Timothy Howland, a treating physician, which attributed depression, fatigue, and easy tearfulness to Claimant's thyroid problems. (T at 250).

The ALJ found that Claimant's spine and thyroid impairments were non-severe. This Court finds no error with regard to the spine impairment. In July of 2009, Dr. Michael Clarke, a treating physician, found that Claimant's lumbar spine was "flexible without evidence of active pathology and irritation." (T at 325). The treatment records, which document numerous complaints of various maladies, generally do not support a claim of severe lower back pain. (T at 369-73, 376-81). Lumber spine x-rays in July 2009 and September 2010 revealed no significant findings. (T at 409, 601).

However, this Court does find that the ALJ did not adequately evaluate the severity of Claimant's thyroid impairment. Dr. Hong Yu, a treating physician, reported in November of 2007 that Claimant was "feeling very tired" and opined that Claimant's fatigue was "somewhat due to [her] thyroid condition." (T at 388). As noted above, in March of 2009, Dr. Howland, a treating physician, attributed depression, fatigue, and easy tearfulness to Claimant's thyroid problems. (T at 250). The ALJ did not address either of these opinions in his decision and there is no indication that he gave serious consideration to the question

of fatigue, which appears to have been caused (at least in part) by Claimant's's thyroid problems. Dr. Sara Long, a psychiatric consultative examiner, noted a linkage between Claimant's thyroid difficulties with depression. (T at 495). Given this evidence, the ALJ's non-severe finding with respect to Claimant's thyroid condition is not supported by substantial evidence and cannot be sustained.

### d. The Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all

requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Plaintiff contends that Claimant's impairments met the impairments set forth in Section 1.02 and/or 1.03 of the Listings. Both Listing § 1.02 (Major dysfunction of a joint(s)) and § 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight- bearing joint) require that the claimant demonstrate an "inability to ambulate effectively." In turn, an "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." (Listings § 1.00B2b). "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." (Listings §1.00B2b).

The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In particular, the ALJ found that Claimant had not demonstrated the inability to ambulate effectively. (T at 12). This conclusion was supported by substantial evidence.

Claimant had right knee surgery on December 23, 2008 (the alleged onset date). (T at 248-49). Following that operation, Claimant was prescribed a cane and returned to part-time work. (T at 285). Claimant had a second knee surgery in March of 2009, used crutches following the surgery, but was "wean[ed] off" crutches shortly thereafter and reported improvement from physical therapy. (T at 327, 329, 330-31). Although Dr. Battaglia noted that Claimant had an "antalgic" gait (i.e. a posture assumed to lessen pain) in April of 2009, examination of her lower extremity revealed no weakness or atrophy of any of the muscles. (T at 310-11). In July of 2009, Dr. Battaglia reported improvement and decreased use of ambulatory aids. (T at 457-58). In September of 2009, Dr. Battaglia reported that Claimant's gait was normal, agility testing was satisfactory, and Claimant was not using ambulatory aids. (T at 469). Claimant had another knee surgery in January of 2010. (T at 619). In May and July of 2010, Dr. Battaglia and Melissa Butler (a nurse practitioner) described Claimant's gait as normal, with no agility testing, and no ambulatory aids. (T at 608, 613).

This evidence was sufficient to sustain this aspect of the ALJ's decision under the "substantial evidence" standard of review.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8

(E.D.N.Y. Jan. 29, 2008).

Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision...." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

In the present case, although some aspects of the ALJ's decision were supported by substantial evidence, this Court finds persuasive proof of disability, including the opinions rendered by Dr. Datta (a consultative examiner) and Dr. Bartolotto (a treating chiropractor). In addition, treatment notes from Dr. Battaglia and Dr. Yu (both treating physicians) also indicated disabling symptoms, including fatigue and other limitations. This Court concludes that a remand for further evidentiary proceedings would serve no purpose. As such, this Court recommends a remand for calculation of benefits.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 1, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 1, 2013

Victor E. Bianchini
United States Magistrate Judge